NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TERRY ROE, | : | |
| Plaintiff, | : | Civil Action No. 10-6798 (JAP) |
| v. | : | |
| EDWARD DIAMOND, et al. | : | **OPINION** |
| Defendants. | : | |

PISANO, District Judge.

Plaintiff Terry Roe[1] brings this action against Defendants Jersey Shore University Medical Center, Meridian Health Systems, Inc., Meridian Health, Inc., Meridian Hospitals Corp., Meridian Health (collectively, "Hospital Defendants"), Edward Diamond, Donna M. Cusson, Ericka D. Clark Distanislao, Jennifer S. Lovey (collectively, "Individual Defendants"), Health Professionals and Allied Employees, AFT/AFL-CIO, and HPAE Local # 5058 (collectively, "Union Defendants" or "Union"), alleging numerous statutory and common law claims in connection with Plaintiff's employment at Jersey Shore University Medical Center. Presently before the Court are separate motions to dismiss filed by the Hospital and Individual Defendants and the Union Defendants. For the reasons below, the Court grants Defendants' motions as to the federal claims contained in Plaintiff's first and second causes of action, and declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] Plaintiff brings this action under a pseudonym. The Court notes that it would require Plaintiff to plead in his real name had it not determined that dismissal is warranted.

**I.     BACKGROUND**[2]

This action arises out of Plaintiff's employment with Jersey Shore University Medical Center ("JSUMC"), a member of the Meridian Health System. Plaintiff commenced his employment at JSUMC in August 2010. Although initially hired as a per diem Registered Nurse in JSUMC's Medical Intensive Care Unit, Plaintiff ultimately accepted a position in JSUMC's Cardiac Catheterization Laboratory ("Cath Lab"). After attending a mandatory Orientation program for new nurses on August 10, 2010—at which Plaintiff received a copy of the Collective Bargaining Agreement ("CBA") between the Union and JSUMC, the pertinent provisions of which are discussed in detail below—Plaintiff began working in the Cath Lab.

Plaintiff was initially assigned to work under Defendant Distanislao as part of a Preceptor Program at JSUMC designed to orient and assess new nurses. Throughout the course of the assignment, Plaintiff requested that a different preceptor be assigned and complained that Distanislao was neither properly orienting him nor complying with Meridian's Code of Conduct. Distanislao was similarly critical of Plaintiff and reported to Defendants Diamond and Cusson that Plaintiff "was not getting the big picture." Am. Compl. ¶ 15.

Plaintiff was subsequently assigned Defendant Lovey as his next preceptor. Plaintiff maintains that his relationship with Lovey was positive for the duration of the preceptor period, up until the final twenty-four hours. At that point, Plaintiff alleges that Lovey's attitude changed, and Plaintiff was required to perform tasks that he had not previously been asked to perform. That same day, Plaintiff was also informed of purported deficiencies in his work that Lovey had provided to Defendant Cusson. Specifically, he was cited for failing to perform

---

[2] In addressing a motion to dismiss, the Court must accept as true the allegations contained in a complaint. *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Accordingly, the facts recited herein are taken from the First Amended Complaint unless otherwise indicated; they do not represent this Court's factual findings.

"time-outs" and for causing distraction by moving about the Cath Lab during procedures. He was further instructed that, unless his work improved, he would be terminated at the end of the probationary period.[3]

Plaintiff was indeed terminated by JSUMC on October 18, 2010. Following his termination, Plaintiff contacted the Union to pursue a grievance. Frederick DeLuca, a Union representative, filed a grievance on Plaintiff's behalf, but the grievance was denied by JSUMC. DeLuca then informed Plaintiff that he would not be taking Plaintiff's grievance to arbitration because Plaintiff was terminated during his probationary period, and "past pattern and practice and the way the Union and Corporate Defendants 'read' the CBA" led them to conclude that the CBA's procedural and substantive protections do not apply to probationary employees. *Id.* ¶ 113. Dissatisfied with that response, Plaintiff filed the instant action on December 28, 2010. After separate motions to dismiss were filed by the Hospital and Individual Defendants and the Union Defendants, Plaintiff filed an Amended Complaint on April 18, 2011.

In his Amended Complaint, Plaintiff alleges seven causes of action and identifies which causes of action are applicable to which Defendants. Specifically, Plaintiff asserts: (1) a hybrid Section 301 claim under the Labor Management Relations Act, alleging both that the Hospital Defendants breached the CBA and the Union breached its duty of fair representation; (2) a claim under Section 7 of the National Labor Relations Act alleging that the Hospital Defendants' conduct constitutes an unfair labor practice; (3) a claim under the New Jersey Law Against

---

[3] Article 4.08 of the CBA provides that "[a]ll employees will be on probation for ninety (90) calendar days following employment." Although the CBA is attached as an exhibit to Defendants' Motion to Dismiss, *see* DE 10, the Court notes that it can still be properly considered. Indeed, although "courts generally consider only the allegations in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss, it is also appropriate to consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court further notes that it is has not considered the numerous other documents attached to the parties' motions, as they are outside the scope of a motion to dismiss.

Discrimination against the Hospital Defendants and Defendants Cusson and Diamond; (4) a defamation claim against the Hospital Defendants and Individual Defendants; (5) breach of contact claims against the Hospital Defendants; (6) a claim under the Conscientious Employee Protection Act against the Hospital Defendants and Defendants Cusson and Diamond; and finally (7) a claim for tortuous interference with prospective economic advantage against the Hospital Defendants and Individual Defendants.

The Hospital and Individual Defendants and the Union Defendants subsequently filed separate amended motions to dismiss Plaintiff's Amended Complaint for failure to state a claim. The Hospital and Individual Defendants move to dismiss all but the third cause of action contained in Plaintiff's Amended Complaint. The Union Defendants move to dismiss Plaintiff's first cause of action under § 301 of the LMRA, as that is the only claim asserted against them.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and footnote omitted).

4

More recently, the Supreme Court emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To help guide a district court's evaluation of a motion to dismiss, the Third Circuit has established a three-part analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1947-50).

### III.  DISCUSSION

A.  <u>Hybrid § 301 Claim Under the Labor Management Relations Act</u>[4]

Plaintiff's first cause of action is properly characterized as a hybrid claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Hybrid claims

---

[4] In his Amended Complaint, Plaintiff clarified that his hybrid § 301 claim was being asserted against the Hospital Defendants and the Union Defendants, not any Individual Defendants. Nevertheless, the Court notes that no cause of action exists against any of the Individual Defendants—particularly because they are not parties to the CBA. Moreover, § 301 does not authorize actions against individual union members or officers for alleged violations of the collective bargaining agreement. *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 248-49 (1962); *Carino v. Stefan*, 376 F.3d 156, 160 (3d Cir. 2004). This is so even if the individual's conduct was unauthorized by the union and in violation of the existing bargaining agreement. *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401-02, 407 (1981) (noting that "the legislative history of § 301 clearly reveals Congress' intent to shield individual employees from liability for damages arising from their breach of ... a collective bargaining agreement, whether or not the union participated in or authorized the illegality.").

5

brought under § 301 contain two "inextricably interdependent" causes of action, one against the employer and one against the union. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164-65 (1983) (internal citations omitted). The cause of action against the employer rests on § 301 of the LMRA, and alleges that the employer breached the applicable collective bargaining agreement. *Id.* The cause of action against the union is implied under the scheme of the National Labor Relations Act, and alleges that the union breached its duty of fair representation. *Id.* To prevail in a hybrid action, a plaintiff must first demonstrate the union's breach of its duty of fair representation. *UPS v. Mitchell*, 451 U.S. 56, 62 (1981) ("the indispensable predicate . . . is . . . a demonstration that the Union breached its duty of fair representation."); *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001) (in a hybrid action, a breach of the duty of fair representation is a "necessary condition precedent" to a plaintiff's claim against an employer). Accordingly, the Court will first consider whether Plaintiff states a claim that the Union breached its duty of fair representation.

### 1. Duty of Fair Representation Claim

As the exclusive bargaining representative of its members, unions owe a fiduciary duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement. *Bazarte v. United Transportation Union*, 429 F.2d 868, 871 (3d Cir. 1970). In the context of grievance proceedings, a union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981). A union does, however, have wide latitude in handling its member's grievance, and "mere ineptitude or negligence in the presentation of a grievance" does not constitute "perfunctory" conduct. *Id.* Indeed, a breach of a union's duty of fair

representation will only be found if a union's actions are arbitrary, discriminatory, or taken in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

In the instant case, Plaintiff first alleges that the Union breached its duty of fair representation by only "perfunctorily" filing a grievance on Plaintiff's behalf. Am. Compl. ¶ 127. In essence, Plaintiff alleges that the Union's failure to pursue arbitration after Plaintiff was terminated at the conclusion of his probationary period was arbitrary and irrational in light of the "explicit contractual language" in the CBA requiring "just cause" removal for "any employee." *Id.* For the reasons below, the Court finds that Plaintiff fails to allege facts sufficient to state a claim that the Union's conduct was arbitrary such that it breached its duty of fair representation.

The Supreme Court defined what conduct falls below the "arbitrary" threshold in *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65 (1991). In *O'Neill*, the Court held that a union's actions are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside 'a wide range of reasonableness as to be irrational.'" *Id.* at 67 (internal citations omitted). Here, Plaintiff has failed to satisfy that threshold. After JSUMC denied the grievance that the Union filed on Plaintiff's behalf, the Union determined that it would not proceed further by taking Plaintiff's grievance to arbitration. As an initial matter, the Court notes that the Union's mere refusal to take the grievance to arbitration does not constitute a breach of the duty of fair representation. *Findley v. Jones Motor Freight, Etc.*, 639 F.2d 953, 958 (3d Cir. 1981). This is so even if even if it was later determined that Plaintiff's claim was meritorious. *Id.*; s*ee also Elliot v. Pepsi-Cola Distributing Co. of Delaware Valley*, 1988 WL 54050, at \*4 (E.D. Pa. May 24, 1988) ("Whether the Union's belief that the term 'new employee' describes an employee who has become a member of the collective bargaining unit is incorrect or the result of poor judgment is not the issue in the case. The test is

whether the Union breached its duty of fair representation by dealing with plaintiff's claim in bad faith or in an arbitrary manner.")

Moreover, the Union's justification for not taking Plaintiff's grievance to arbitration finds support in the explicit language of the CBA. Article 4.08 provides in pertinent part that "[a]ll employees will be on probation for ninety (90) calendar days following employment." As Plaintiff acknowledges, JSUMC and the Union have a longstanding understanding and established practice that probationary employees are not members of the Union until the completion of the initial 90 day period and are therefore not afforded the CBA's procedural and substantive protections. Am. Compl. ¶ 113, 115, 127. Indeed, probationary employees are not entitled to use vacation time or vote in union matters until the probationary period is completed, and dues are not deducted from their paychecks. *Id.* ¶ 42-43. As Plaintiff himself concedes, dues were not in fact deducted from his salary during his employment at JSUMC. *Id.* ¶ 43. Thus, the Union's decision not to take Plaintiff's grievance to arbitration was consistent with its understanding of probationary employees' rights and its treatment of "similarly-situated employees" who came before Plaintiff. *Id.* ¶ 115.

Furthermore, the Union's practice and understanding as to probationary employees' rights under the CBA has been accepted by other courts in the Third Circuit and found sufficient to overcome claims that the union breached its duty of fair representation. For example, in *Elliot v. Pepsi-Cola Distributing Co. of Delaware Valley*, the district court held that the duty of fair representation was not breached when the union chose not to take plaintiff's grievance to arbitration based upon its belief that he would be considered a probationary employee whose discharge was therefore non-grievable. *Elliot*, 1988 WL 54050, at *4. The court deemed the Union's determination to be reasonable in light of its understanding of the CBA's terms and

employee classifications, and held that the union satisfied its duty by filing a grievance on plaintiff's behalf. *Id.*; *see also Dyche v. Bonney*, 2005 WL 3118034, at *2 n.2 (M.D. Pa. Nov. 22, 2005) (probationary employees are not covered by the CBA because the "probationary nature of Plaintiff's position negates the expectation Plaintiff might have had in continued employment"); *Gomez v. United Paperworkers Int'l Union Local No. 333*, 1992 WL 67885, at *6 (E.D. Pa. Mar. 24, 1992) (citing "the established practice" and understanding between the employer and union as important, and finding that the union's investigation was not perfunctory where plaintiff was terminated during the probationary period).

Accordingly, "in light of the factual and legal landscape at the time of the union's actions"—including the Union's longstanding practice and understanding as to probationary employees as well as the corresponding support in the language of the CBA— the Union's decision not to take Plaintiff's claim to arbitration cannot be said to have been "so far outside 'a wide range of reasonableness as to be irrational'" *O'Neill*, 499 U.S. at 67.

As an additional basis for his claim that the Union breached its duty of fair representation, Plaintiff contends that the Union's actions in the grievance process were taken in bad faith. Specifically, Plaintiff asserts that the Union's actions were motivated by its desire to avoid the potential windfall of liability that would result if it admitted that it had repeatedly violated its duty to probationary employees in the past by failing to enforce the CBA's "just cause" provisions. Am. Compl. ¶ 115-16, 127. Moreover, Plaintiff contends that Frederick DeLuca, the Union representative who filed a grievance on his behalf, had a friendly relationship with Defendant Diamond that motivated the alleged breach of his duty to fairly represent Plaintiff. *Id.* ¶ 117, 127.

To establish discrimination or bad faith as the basis for a breach of the duty of fair representation, a plaintiff must prove the existence of an improper motive behind the union's action. *O'Neill*, 499 U.S. at 74-75. He must be able to allege specific facts that support the finding of such a motive, *United Steel Workers v. Rawson*, 494 U.S. 362, 372 (1990), and the court must inquire into the subjective motivation of the union's behavior to determine whether discrimination or bad faith influenced its actions. *O'Neill*, 499 U.S. at 74-75.

Here, Plaintiff fails to state a claim that the Union's actions were discriminatory or taken in bad faith. Plaintiff's allegation that the Union was seeking to avoid liability by not pursuing his grievance to arbitration is a mere legal conclusion "couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950 (internal citations omitted). Indeed, it is premised on the same argument that the Court considered and rejected above—namely, that the Union's alleged failure to understand or enforce the CBA's provisions was arbitrary. Likewise, Plaintiff's allegation as to the Union representative's friendly relationship with Defendant Diamond is simply a conclusory assertion that is "not entitled to the assumption of truth." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 129 S. Ct. at 1950). As it does not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 55, or provide "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 129 S. Ct. at 1949, it is insufficient to withstand a motion to dismiss. Accordingly, the Court finds that Plaintiff fails to state a claim that the Union breached its duty of fair representation.

### 2. Section 301 Claim Against Hospital Defendants

In his corresponding claim against the Hospital Defendants under § 301 of the LMRA, Plaintiff alleges that the Hospital Defendants breached the CBA by, *inter alia*, terminating Plaintiff without just cause, failing to provide a performance appraisal required by the CBA, and

discriminating against Plaintiff because he filed a complaint with JSUMC. Am. Compl. ¶ 125-26. Because the necessary predicate in a hybrid § 301 claim is a demonstration that the Union breached its duty of fair representation, *see Mitchell*, 451 U.S. at 62; *Albright*, 273 F.3d at 576, Plaintiff's § 301 claim against the Hospital Defendants must be dismissed.

      B. Claim under Section 7 of the National Labor Relations Act

Plaintiff's second cause of action alleges that the Hospital Defendants violated Section 7 of the National Labor Relations Act, 29 U.S.C. 157 ("NLRA"), by terminating Plaintiff because of his complaints regarding Defendant Clark Distanislao and the preceptor program at large. Am. Compl. ¶ 129. Defendants contend that the Court does not have jurisdiction over this claim because it is preempted by the doctrine set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

In *Garmon*, the Supreme Court established the general principle that neither state nor federal courts have jurisdiction over suits involving "activity [which] is arguably subject to § 7 or § 8 of the [NLRA]." *Id.* at 245. In such cases, courts must defer to the exclusive competence of the National Labor Relations Board ("NLRB"). *Id.* Thus, if a cause of action "implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA,[5] the cause of action is preempted." *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

The Supreme Court has, however, recognized narrow exceptions to *Garmon*'s general preemption doctrine. Relevant to this case, a district court retains jurisdiction over claims properly brought under § 301 of the LMRA, even if the matter is arguably subject to § 7 or § 8 of the NLRA. *Vaca*, 386 U.S. at 179-80 (section 301 "permits suits for breach of a collective

---

[5] Section 7 regulates the right of employees to organize and engage in collective bargaining. 29 U.S.C. § 157. Section 8 prohibits employers and unions from committing unfair labor practices as defined the section. 29 U.S.C. § 158.

11

bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board"); *Mack Trucks, Inc. v. International Union*, 856 F.2d 579, 585 (3d Cir. 1988). Correspondingly, the *Garmon* preemption doctrine does not deprive a district court of jurisdiction over claims alleging a breach of a union's duty of fair representation. *Vaca*, 386 U.S. at 187-88.

Here, to the extent that Plaintiff's second cause of action rests on the Hospital Defendants' alleged breach of the CBA or the Union's alleged breach of its duty of fair representation, Plaintiff is correct in asserting that *Garmon*'s preemption doctrine does not deprive the Court of jurisdiction. *See id.* Nevertheless, the Court has considered those claims and dismissed them above. *See supra* III (A)-(B). Furthermore, to the extent that Plaintiff's claim is brought directly under § 7 and alleges that the Hospital Defendants engaged in an unfair labor practice as defined in the NLRA,[6] *Garmon* applies. *See Garmon*, 359 U.S. at 242-44; *Voilas*, 170 F.3d at 378; *Crafts v. General Motors Corp.*, 192 F. Supp. 2d 310, 315 (D. De. 2002). Thus, Plaintiff's claim is preempted by the exclusive jurisdiction of the NLRB.

C. Remaining State Law Claims

The remaining causes of action contained in Plaintiff's Amended Complaint arise under state law. Under 28 U.S.C. § 1667(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. Where the claims over which the district court had original jurisdiction are dismissed before trial, "the district court must decline to decide the pendant state claims unless

---

[6] The Court notes that Plaintiff's primary contention under § 7 appears to be that the Hospital Defendants terminated him for attempting to enforce the CBA's provisions. *See* Am. Compl. ¶ 129; Pl.'s Mot. Opp. at 22. In *NLRB v. City Disposal Systems*, 465 U.S. 822, 833 (1984), the Supreme Court held that "concerted activity" within the meaning of § 7 of the NLRA encompasses a "lone employee's invocation of a right grounded in his collective-bargaining agreement." Thus, Plaintiff's allegations with regard to his invocation of CBA rights are preempted by *Garmon*. *See id*. (plaintiff's invocation of CBA rights by filing grievance constitute "concerted activity"); *see also Wright v. Nesor Alloy Corp.,* 2006 WL 2830969, at *9-10 (D.N.J. September 29, 2006) (claims based on filing of grievances pursuant to CBA procedures are preempted).

12

considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court concludes that no affirmative justification is present for retaining jurisdiction over Plaintiff's state law claims. Because the Court is granting Defendants' motions to dismiss as to the federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## IV. CONCLUSION

For the reasons above, the Court grants Defendants' motions to dismiss as to the federal claims contained in Plaintiff's first and second causes of action, and declines to exercise supplemental jurisdiction over the remaining state law claims. An appropriate Order will follow.


/s/ JOEL A. PISANO
United States District Judge

Dated: October 5, 2011