NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN SIMONI, | |
| Plaintiff, | Civil Action No. 10-6798 (JAP) |
| v. | **OPINION** |
| EDWARD DIAMOND, KATHRYN J. LUCIANI, MERIDIAN HEALTH SYSTEMS, INC., MERIDIAN HEALTH, INC., MERIDIAN HOSPITALS CORP., MERIDIAN HEALTH, DONNA M. CUSSON, JERSEY SHORE UNIVERSITY MEDICAL CENTER, ERICKA D. CLARK DISTANISLAO, JENNIFER S. LOVEY, HEALTH PROFESSIONALS AND ALLIED EMPLOYEES, AFT/AFL-CIO, AND HPAE LOCAL #35058, | |
| Defendants. | |

PISANO, District Judge

Presently before the Court is Plaintiff, Terry Roe's[1] ("Plaintiff") motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on the first cause of action under 28 U.S.C. § 185, i.e. Section 301 of the Labor Management Relations Act of 1947 ("LMRA") [docket #51]. Defendants, Meridian Health Systems, Inc., Meridian Health, Inc., Meridian Hospitals Corp., Meridian Health, and Jersey Shore University Medical Center (collectively "Defendants") oppose this motion [docket #55]. The Court considered the papers filed by the parties and rules on the written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.

---

[1] Plaintiff's Complaint alleges that Terry Roe is a pseudonym. Plaintiff's actual name is Stephen Simoni.

1

For the reasons that follow, this Court DENIES Plaintiff's motion for partial summary judgment [docket #51].

I.   BACKGROUND

This dispute arises out of an employment relationship beginning on August 10, 2010, where Plaintiff began working as a nurse at Jersey Shore University Medical Center.  See Plaintiff's Statement of Material Facts Not in Dispute ("Plaintiff's SUMF"), at ¶ 3.  Shortly after Plaintiff was hired, he attended a hospital wide orientation for newly-hired nurses where he completed forms to enroll as a member of the Health Professionals and Allied Employees, AFT, AFL-CIO ("HPAE" or "Union"), effective immediately.  Plaintiff's SUMF, at ¶¶ 4, 6.  The forms completed at orientation permitted Defendants to withhold money from Plaintiff's paychecks for transmittal to the Union.  Plaintiff's SUMF, at ¶ 4.  Further, while at orientation, Plaintiff received documents including a "rights" sheet which described the key question deciding discipline grievances as whether management had 'just cause' for imposing it, and Plaintiff also received the HPAE collective bargaining agreement ("CBA").  Plaintiff's SUMF, at ¶¶ 6-7.

The CBA provides, in relevant part:

> **1. Agreement Scope**
>
> This agreement covers all employees … and includes permanent full-time or permanent part-time employees as defined in Article Four, employed as a Graduate or Registered Nurse, Certified Registered Nurse Anesthetist, Clinical Nurse Specialist, Nurse Clinician, Nursing Education Instructor and per diem nurses (herein called "employee") employed by the Hospital, excluding all other employees including Nurse Managers, Assistant Nurse Managers, Nurse Practitioners, Clinical Nurse Coordinators and other Supervisors as defined by the [NLRA].
>
> ******
>
> **4. Employee Status**

…

4.08 Probationary Period: All employees regardless of status will be on probation for ninety (90) calendar days following employment ….

******

## 12. Discipline and Discharge

12.01 The Hospital shall reserve the right to discipline, suspend or discharge any employee only for just cause ….

12.02 The designated Union representative, the Union office and the employee involved shall be advised, in writing, of any discharge, suspension or disciplinary action. A copy of the notice given to the employee shall be mailed to the Union within twenty-four (24) hours ….

## 13. Grievance Procedure

….

13.02 *Step I-Chief Nurse Executive*: Grievances shall be raised by the employee and/or union representative with the Chief Nurse Executive or his/her designee in writing within ten (10) working days from occurrence giving rise to the grievance or within ten (10) working days from the time the employee should have reasonably been aware of such occurrence, whichever is later. If the matter is not resolved within five (5) working days of presentation of the grievance, it may be taken to Step II. The employee, at his/her request, shall have the right to have a Union representative present.

13.03 *Step II – Vice President of Human Resources*: The employee/Union shall forward the grievance to the Vice President of Human Resources or his/her designee within five (5) working days after the receipt of the written response from the Department Manager. The matter will be investigated and meeting scheduled within ten (10) working days after the receipt of the written appeal. A written response to the grievance shall be given within five (5) working days after the meeting and returned to the grieving party. If there is no resolution, the grieving party may progress to Step III.

13.04 *Step III – Arbitration*: The grievance may be submitted to arbitration by the Union within twenty (20) working days from the receipt of the answer in Step II….

******

**20. Scope of Bargaining**

The Hospital and the Union acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter not removed by law from the area of collective bargaining and that the understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement, which constitutes the full and complete agreement between the parties notwithstanding any oral agreement or any past practices, policies or procedures ….

[Certification of Counsel in Support of Defendants' Motion to Dismiss and/or Strike Portions of Plaintiff's Complaint, docket #7, at Ex. E].

Defendants "Guidelines for Cooperation and Discipline" were incorporated into the CBA by reference and provided a four (4) step progressive disciplinary process for "all team members of Meridian Health and its partner companies, including Meridian Hospitals Corporation and its hospitals." Plaintiff's SUMF, at ¶ 9. The Guidelines also provided that "[n]o team member will be discharged from staff without the disciplinary review process." Plaintiff's SUMF, at ¶ 9. Plaintiff alleges that the Guidelines contained a "special note" specifying that only those "team members who are in a leadership role . . . are employed at-will" and that Plaintiff's nurse's position was not a leadership role. Plaintiff's SUMF, at ¶¶ 10-11.

On October 18, 2010, approximately two (2) months after being hired, Plaintiff was terminated from his employment with Meridian. Plaintiff's SUMF, at ¶ 15. Following his termination, Plaintiff contacted the Union to pursue a grievance. Frederick DeLuca, a Union representative, filed a grievance on behalf of Plaintiff which Defendants denied. DeLuca also informed Plaintiff that he would not be taking Plaintiff's grievance to arbitration. Dissatisfied with this response, Plaintiff filed the instant action on December 28, 2010. Plaintiff alleges that

Defendants failed to assert "just cause" existed for his termination and refused to provide Plaintiff access to the CBA's grievance and arbitration provisions. Plaintiff's SUMF, at ¶ 16. Conversely, however, Defendants contend that Plaintiff was a probationary employee during his first ninety (90) days of employment as provided in section 4.08 of the CBA and therefore, at the time of his termination, Plaintiff was not covered by the CBA nor entitled to the grievance and arbitration provisions. See May 10, 2011 Certification of Fred DeLuca submitted in support of the Union's Motion to Dismiss ("DeLuca Cert."), at ¶¶ 4-5; see also, Certification of Kathryn J. Luciani ("Luciani Cert."), at ¶¶ 4-7.

On April 18, 2011, Plaintiff filed an Amended Complaint asserting seven (7) causes of action against the Union, individual Defendants, and the instant Defendants: (1) a hybrid Section 301 claim under the LMRA, alleging that Defendants breached the CBA and the Union breached its duty of fair representation; (2) a claim under Section 7 of the National Labor Relations Act ("NLRA") alleging that Defendants' conduct constitutes an unfair labor practice; (3) a claim under the New Jersey Law Against Discrimination against Defendants and individual Defendants Cusson and Diamond; (4) a defamation claim against Defendants and individual Defendants; (5) breach of contract claim against Defendants; (6) a claim under the Conscientious Employee Protection Act against Defendants and individual Defendants Cusson and Diamond; and (7) a claim for tortious interference with prospective economic advantage against Defendants and individual Defendants.

Shortly after Plaintiff filed his Amended Complaint, the Hospital and individual Defendants moved to dismiss all but the third cause of action contained in Plaintiff's Amended Complaint for failure to state a claim. The Union also moved to dismiss Plaintiff's Section 301 claim under the LMRA. On October 6, 2011, this Court dismissed Plaintiff's federal claims, and

declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Roe v. Diamond*, CIV.A. 10-6798 JAP, 2011 WL 4736353 (D.N.J. Oct. 6, 2011) *aff'd in part, rev'd in part,* 519 F. App'x 752 (3d Cir. 2013) and *vacated*, 10-CV-6798 JAP, 2013 WL 6451683 (D.N.J. Aug. 29, 2013). On October 8, 2011, Plaintiff appealed this Court's ruling and on March 20, 2013, the Third Circuit Court of Appeals affirmed in part and reversed in part. See *Roe v. Diamond*, 519 F. App'x 752, 753 (3d Cir. 2013). Specifically, the Third Circuit affirmed this Court's dismissal of Plaintiff's NLRA claim, but reversed and remanded the dismissal of Plaintiff's Section 301 claim. In so doing, the Third Circuit disagreed with the Court and Defendants' interpretation of the CBA in that it simply did not apply to probationary employees, and held that it is "certainly plausible to interpret the CBA as merely restricting 'probationary' employees' eligibility for fringe benefits rather than wholly excluding any rights under the CBA.'" *Id*. at 758. Subsequent to remand, Plaintiff voluntarily dismissed the Union Defendants from this matter [docket #54] and filed the instant motion for summary judgment on his Section 301 claim as against the Hospital Defendants [docket #51].

## II.   DISCUSSION

### a.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed.R.Civ.P. 56(c)(1) (B); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Facts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is

sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322-23)).

Further, "[i]n a contract interpretation action, summary judgment is appropriate only where the contractual language is unambiguous—*i.e.,* "subject to only one reasonable interpretation." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (citing *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.,* 180 F.3d 518, 521 (3d Cir.1999)). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Id*. at 418-19 (citing *Newport Assocs. Dev. Co. v. Travelers Indem. Co.,* 162 F.3d 789, 792 (3d Cir.1998); *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Landtect Corp. v. State Mut. Life Assurance Co.,* 605 F.2d 75, 80 (3d Cir.1979)). Under New Jersey law, courts must always "'consider all of the relevant evidence that will assist in determining the intent and meaning of the contract'" when making ambiguity determinations. *Id*. at 419 (quoting *Conway v. 287 Corp. Ctr. Assocs.,* 187 N.J. 259, 901 A.2d 341, 346 (2006)). Stated differently, "[e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity." *Id*. Thus, if after considering all relevant evidence to determine if any ambiguity exists, the contested provisions fall within that gray area, summary judgment is improper. *Id*.

Moreover, "[i]t has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290, 76 L. Ed. 2d 476 (1983) (citing *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). "Ordinarily, however,

7

an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Id*. (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)).  Nevertheless, the Supreme Court has recognized "that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id*. at 164 (citing *Vaca v. Snipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842; *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231; United Parcel Service, Inc. v. *Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732; *Bowen v. United States Postal Service, et al.,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402; *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970)).  Procedurally, this type of suit comprises two causes of action.  "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." *Id*.  "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" *Id*. at 165 (citing *Mitchell,* 451 U.S., at 66–67, 101 S.Ct., at 1565–1566 (Stewart, J., concurring in the judgment), quoting *Hines,* 424 U.S., at 570–571, 96 S.Ct., at 1059).  As such, the employee may "sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.  The suit is thus not a straightforward breach of contract suit under § 301, . . . but a hybrid § 301/fair representation claim, amounting to 'a direct challenge

8

to 'the private settlement of disputes under [the collective-bargaining agreement].'" *Id.* (citing *Mitchell,* 451 U.S., at 66, 101 S.Ct., at 1565 (Stewart, J., concurring in the judgment), quoting *Hoosier,* 383 U.S., at 702, 86 S.Ct., at 1111).

    **b.    Analysis**

As stated above, to prevail on a hybrid Section 301 claim, Plaintiff must show that the union breached its duty of fair representation and that Defendant wrongfully terminated his employment under the terms of the CBA. Before this analysis is even reached, however, the Court must first determine whether Plaintiff, as a probationary employee, was entitled to the protections of the CBA. Plaintiff asserts that on appeal, the Third Circuit conclusively determined that the CBA does indeed apply, and therefore the Court may determine summary judgment based solely on the hybrid Section 301 analysis. The Court disagrees with this contention. Plaintiff is confusing the standard applied by the Third Circuit in analyzing Defendants' motion to dismiss. Specifically, rather than making a fact finding surrounding whether the CBA applied, the Third Circuit held that Plaintiff's interpretation of the CBA was *plausible*, such that it was sufficient to withstand a Rule 12(b)(6) motion. *Roe,* 519 F. App'x at 758 (emphasis supplied). Indeed, a Rule 12(b)(6) motion to dismiss cannot be used to resolve factual issues or to determine the merits of Plaintiff's claim. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990); see also, *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Finding that a fact is plausible hardly suffices to conclusively establish such fact for purposes of summary judgment, nor does it enable this Court to find that no genuine dispute of such material fact exists. Determining whether the CBA applied to Plaintiff at the time of his termination is indeed a material fact, as it is dispositive of Plaintiff's Section 301 claim. While Plaintiff's interpretation of the contract is, as stated by the Third Circuit, certainly a plausible reading, Defendant has produced

sufficient evidence showing that a dispute exists regarding whether the parties intended the CBA to apply to probationary employees. See [Docket No. 61, at Exh. C ("The [CBA] section 4.08 h as [sic] always being [sic] interpreted and applied to mean that for the 1st 90 days an employee is at will. The basic contract language has never changed since 1983.")].

While the CBA, on its face, appears to be free from any ambiguity, evidence of the circumstances is permissible to aid in interpreting an integrated agreement. Here, the language as contained in the CBA combined with the circumstances surrounding how the Defendants have continuously interpreted the CBA results in an ambiguity regarding whether a probationary employee is at-will. As explained above, where a "nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." See *Mylan Inc.*, 723 F.3d at 418. Defendants have adduced sufficient evidence to present a reasonable alternative reading of the contract, namely, that probationary employees – like Plaintiff – are at-will and not covered by the protections of the CBA. It is not for this Court to determine what the parties intended by the language of the contract. Rather, it is a fact question properly left to the jury. For these reasons alone, Plaintiff's motion for partial summary judgment must be denied.

In any event, Plaintiff's motion primarily focuses on whether Defendants breached the CBA by terminating him without just cause. In making this argument, Plaintiff is assuming that the CBA applies and that he has already met his burden in showing that the Union breached its duty of fair representation, such that the sole remaining issue is whether Defendants had just cause for terminating Plaintiff. As set forth above, an issue of fact exists over whether the CBA applies; however, to the extent that it does, and assuming the Union breached its duty of fair

representation,[2] summary judgment would still be improper as a genuine dispute of fact exists surrounding the reasons for Plaintiff's termination.  Defendants assert that Plaintiff's termination was justified because there is evidence of poor work performance and improper interactions with coworkers, such that this misconduct amounts to "just cause."  However, the CBA does not define what constitutes "just cause," and the appropriate body to give meaning to this term in order to determine whether the decision to terminate Plaintiff was justified, is the jury.  As such, this Court must deny Plaintiff's motion.

### III. CONCLUSION

For the foregoing reasons, this Court DENIES Plaintiff's motion for partial summary judgment [docket #51].  An appropriate Order accompanies this Opinion.

Date:  September 23, 2014                               /s/ Joel A. Pisano
                                                        JOEL A. PISANO
                                                        United States District Judge

---

[2] Plaintiff contends that the Union concedes breaching their duty of fair representation.  The Court is assuming this fact for purposes of the analysis; however, nothing in this Opinion is to be construed as making a fact finding surrounding whether the Union breached its duty owed to Plaintiff.