***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEPHEN SIMONI, | : |
| | : Civil Action No. 10-6798 (FLW) |
| Plaintiff, | : |
| | : **OPINION** |
| v. | : |
| | : |
| EDWARD DIAMOND, *et al.*, | : |
| | : |
| Defendants. | : |

**WOLFSON, District Judge:**

Plaintiff Stephen Simoni ("Plaintiff" or "Simoni") brings this suit[1] against numerous defendants, including his employers, Jersey Shore University Medical Center ("Jersey Shore"), Meridian Health System, Inc., Meridian Health, Inc., Meridian Hospital Corp., Meridian Health and various hospital individuals, (collectively, "Defendants" or "Meridian"), as well as AFT, AFL-CIO and HPAE Local 508 (together, the "Union"),[2] alleging various labor and employment violations arising from the termination of Plaintiff's position as a nurse. Plaintiff's Amended Complaint asserts a federal, hybrid § 301 claim under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), alleging a breach of

---

[1] This matter was transferred to this Court upon the retirement of the Hon. Joel A. Pisano, U.S.D.J.

[2] On February 21, 2014, the claims against the Union were dismissed as settled and as such, the Union is no longer a defendant in this case.

the Collective Bargaining Agreement ("CBA") and a breach of the duty of fair representation (Count One);[3] and various state law claims against Meridian, including breach of contract (Count Two), violation of New Jersey's Conscientious Employee Protection Act (Count Three), violation of the New Jersey Law Against Discrimination (Count Four), defamation (Count Five), and tortious interference (Count Six) (collectively, the "State Law Claims"). Before the Court are two separate motions for summary judgment, filed by Plaintiff, on Counts One and Two of the Complaint, respectively. Defendants cross-move for summary judgment on all counts.

For the reasons set forth below, the Court **GRANTS** Plaintiff's summary judgment motion as to his § 301 claim pertaining *only* to Defendants' failure to provide adequate grievance procedures afforded by the CBA. The remaining motions for summary judgment are **DENIED** without prejudice. The parties are directed to submit additional briefing, by no later than September 25, 2015, with regard to the impact of this Court's decision, *vis-a-vis* the relief to which Plaintiff is entitled under § 301. Moreover, Defendants may make additional arguments, if any, with respect to § 301 preemption of Plaintiff's State Law Claims. The parties are not permitted to file a response unless otherwise ordered by the Court.

---

[3]   Initially, Plaintiff brought a claim for unfair labor practices in violation of Section 7 of the National Labor Relations Act ("NLRA"), 28 U.S.C. § 157, against the Union; however, that claim was dismissed by Judge Pisano before this case was transferred to me. I note that this dismissal has been affirmed by the Third Circuit. *See Roe v. Diamond*, 519 Fed. Appx. 752 (3d Cir. 2013).

**BACKGROUND**

**I.     Simoni's Union Membership**

Because the Court is only resolving a portion of Plaintiff's motion for summary judgment on the § 301 claim, the Court need only recount undisputed facts relevant to the issues pertinent to this Opinion. Simoni began his full-time employment as a Registered Nurse at Meridian's Cardiac Catherization Laboratory in August 2010. *See* Def.'s Statement of Undisputed Material Facts ("Def. Statement"), ¶ 4; Pl.'s Statement of Undisputed Material Facts ("Pl. Statement"), ¶ 3. Simoni attended an orientation program wherein he was advised, *inter alia*, that his employment as a nurse was subject to the terms and conditions of a CBA between Meridian and the Union; a copy of the CBA was distributed to Simoni. *See* Def. Statement, ¶ 9; Pl. Statement, ¶ 7. Indeed, during the program, Simoni completed paperwork which indicated that he wished to be a member of the Union, and Simoni authorized the Union to deduct 1% of his gross salary as the union dues. *Id.* at ¶ 10. The deduction, according to the relevant document, was to be "effective at once." *See* Due Deduction Auth. dated August 18, 2010. And, Simoni agreed to pay a union- initiation fee of $30, to be deducted "from each of the three (3) paychecks due [Simoni] next following the execution of this authorization and remit these sums to the union by the following month." Initiation Fee Authorization dated August 18, 2010.

According to Meridian, however, Simoni's membership in the Union did not go into effect until he completed ninety days of employment with Meridian,

paid the initial fee, and began paying dues.[4] Def. Statement, ¶ 11. The Union representative, Fred DeLuca, testified that because Simoni's employment ended before Simoni had completed the 90-day probationary period, no union dues were ever deducted from Plaintiff's paycheck. *See* DeLuca' Dep., T49-T54. Notwithstanding that assertion, the Union took some deductions from Simoni's paycheck which were purportedly associated with the Union's health trust. *See* Def. Statement, ¶ 13.

## II. The CBA

The CBA at issue here provides Meridian certain rights regarding the discipline and discharge of covered employees. Under the CBA, the Union can contest any discharge or disciplinary action, and the parties consent to arbitrate any "grievance" that remains unresolved after the defined "Grievance Procedures" set forth specifically in the CBA. That Agreement provides in relevant part:

> **1. Agreement Scope**
>
> This agreement *covers all employees ... and includes permanent full-time or permanent part-time employees as defined in Article Four*, employed as a Graduate or Registered Nurse, Certified Registered Nurse Anesthetist, Clinical Nurse Specialist, Nurse Clinician, Nursing Education Instructor and per diem nurses (herein called "employee") employed by the Hospital, excluding all other employees including Nurse Managers, Assistant Nurse Managers, Nurse Practitioners, Clinical Nurse Coordinators and other Supervisors as defined by the [NLRA].
>
> **4. Employee Status**

---

[4] I note that the parties have not submitted copies of Plaintiff's pay stubs to show what union-related deductions were taken out of Plaintiff's salary during his employment at Meridian.

4

. . .

4.01 Status I- Full Time Permanent: An employee who is employed on a regular basis to work forty (40) hours per work week . . . .

4.02 Status II- Part Time Permanent: An employee who is employed on a regular basis to work twenty (20) but less than thirty-six (36) hours per week.

4.03 Status III- Part Time Permanent: An employee who is employed on a regular basis to work nineteen (19) or fewer hours per work week.

4.04 Status IV- Per Diem: An employee who is employed as needed by the Hospital and subject to the employee's availability with no guarantee of hours. Such employee shall be part of the bargaining unit and as such be entitled to seniority and all rights and benefits as outlined in the contract . . . .

4.05 Status V- Temporary: An employee who is employed full time or part time for a limited period of time, no greater than six (6) months in any calendar year . . . .

. . .

4.08 Probationary Period: All employees regardless of status will be on probation for ninety (90) calendar days following employment . . . .

**12. Discipline and Discharge**

12.01 The Hospital shall reserve the right to discipline, suspend or discharge any employee only for just cause . . . .

12.02 The designated Union representative, the Union office and the employee involved shall be advised, in writing, of any discharge, suspension or disciplinary action. A copy of the notice given to the employee shall be mailed to the Union within twenty-four (24) hours . . . .

. . .

**13. Grievance Procedure**

....
13.02 Step I–Chief Nurse Executive: Grievances shall be raised by the employee and/or union representative with the Chief Nurse

Executive or his/her designee in writing within ten (10) working days from occurrence giving rise to the grievance or within ten (10) working days from the time the employee should have reasonably been aware of such occurrence, whichever is later. If the matter is not resolved within five (5) working days of presentation of the grievance, it may be taken to Step II. The employee, at his/her request, shall have the right to have a Union representative present.

13.03 Step II—Vice President of Human Resources: The employee/Union shall forward the grievance to the Vice President of Human Resources or his/her designee within five (5) working days after the receipt of the written response from the Department Manager. The matter will be investigated and meeting scheduled within ten (10) working days after the receipt of the written appeal. A written response to the grievance shall be given within five (5) working days after the meeting and returned to the grieving party. If there is no resolution, the grieving party may progress to Step III.

13.04 Step III—Arbitration: The grievance may be submitted to arbitration by the Union within twenty (20) working days from the receipt of the answer in Step II . . . .

. . .

**20. Scope of Bargaining**

The Hospital and the Union acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter not removed by law from the area of collective bargaining and that the understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement, *which constitutes the full and complete agreement between the parties notwithstanding any oral agreement or any past practices, policies or procedures* . . . .

CBA, pp. 73-123 (emphasis added).

### III. Simoni's Termination

Meridian ultimately terminated Simoni on October 18, 2010, during his probationary period. The parties dispute the reasons for the termination.[5]

---

[5]   Because I am not deciding the merits of Plaintiff's State Law Claims or the

6

Suffice it to say, according to Defendants, Simoni was discharged because he did not perform to management's satisfaction during the first eight weeks of his Preceptor Program and Simioni also engaged in inappropriate and insubordinate behavior.  Plaintiff, on the other hand, contends that he was wrongfully terminated based on his gender and that Defendants retaliated against him for disclosing certain alleged violations of patient safety requirements under New Jersey law.

Following his termination, Simoni contacted Mr. DeLuca to file a grievance against Meridian pursuant to the CBA.  *See* DeLuca Dep., T138.  Mr. DeLuca filed a grievance on Plaintiff's behalf, but it was later rejected by Meridian.[6]  *Id.*  Mr. DeLuca testified that because it was the understanding of both the Union and Meridian that Simoni was not a covered employee under the CBA, Mr. DeLuca did not pursue the grievance further.  Thereafter, Plaintiff filed the instant suit asserting a § 301 hybrid claim, and other State Law Claims, against the Union and Meridian

**IV.	Procedural History**

After Simoni filed his initial Amended Complaint, Meridian and the Union both moved to dismiss Plaintiff's claims.  On October 6, 2011, Judge Pisano granted the motions, dismissing Plaintiff's federal § 301 cause of action and

---

reason for Plaintiff's termination here, I need not recount the underlying facts in that regard.

[6]	I note that nowhere in DeLuca's testimony does he justify why he initially filed a grievance on Plaintiff's behalf since he was of the opinion that Plaintiff was not a covered employee under the CBA.  *See* DeLuca Dep., T28.

7

declined to exercise supplemental jurisdiction over the State Law Claims. *See* Opinion dated October 6, 2011. In that decision, Judge Pisano held that Plaintiff had failed to state a claim under the LMRA because the Amended Complaint lacked sufficient allegations to establish that the Union had breached its duty of fair representation.[7] *See Id.* at pp. 6-10. More particularly, Judge Pisano found that Plaintiff has failed to plead that Plaintiff was a union employee covered by the CBA at the time his employment ended.

Plaintiff appealed Judge Pisano's ruling, and the Third Circuit, in a decision filed on March 20, 2013, affirmed in part and reversed in part. Specifically, the Third Circuit affirmed the dismissal of Plaintiff's NLRA claim, but reversed the dismissal of Plaintiff's § 301 claim. The court found that the facts pled were sufficient to state a claim for the breach of duty of fair representation in the context of § 301.[8] *Roe*, 519 Fed. Appx at 757-58.

After remand, Plaintiff moved for summary judgment on his § 301 claim. That motion was denied by Judge Pisano. Subsequently, Plaintiff filed a motion for reconsideration, at which time this case was transferred to me. At that time, Plaintiff and Defendants simultaneously filed the instant motions for summary judgment. This Court denied Plaintiff's reconsideration motion on the basis that the parties had not presented sufficient evidence from which the Court could determine whether Plaintiff's § 301 claim had merit.

Because, in connection with these summary judgment motions, the

---

[7]   Judge Pisano also dismissed Plaintiff's NLRA claim.

[8]   This Third Circuit's decision will be discussed in detail, *infra*.

parties have adequately presented a full record on Plaintiff's § 301 claim, and more specifically, the threshold issue whether Plaintiff is a covered employee under the CBA, I will make those determinations in this Opinion.

## DISCUSSION

### I. Standard of Review

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing Fed R. Civ. P. 56(c)). The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* Fed R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.

1986). Accordingly, it is not the court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks*, 204 F.3d at 105 n.5 (citing *Anderson*, 477 U.S. at 249).

## II. Simoni's Status under the CBA

Plaintiff has insisted throughout this litigation that, pursuant to the plain language of the CBA, he was a union employee entitled to the protections, including the grievance process, afforded to him by the CBA. To the contrary, Defendants maintain that not only are the provisions of the CBA clear that an employee terminated before the end of his or her probationary period is not covered under the CBA, but that such was the intention of Meridian and the Union when they entered into the Agreement. And, if there is any ambiguity in that regard, Defendants argue that the language of the CBA should be construed to reflect such an understanding. I find that the terms of the CBA are unambiguous: an employee is covered under the CBA regardless of his or her probationary status.

As an overview, a "hybrid" § 301/fair representation action is comprised of two separate, but interdependent, causes of action that may be brought together. *See Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983) ("A plaintiff who has a viable 'hybrid' claim against both the employer and the union may opt to bring only the section 301 claim against the employer or the breach of duty of fair representation claim against the union . . . . Either claim standing

alone can be brought in federal court because each has an independent jurisdictional basis"). Ordinarily, in such a hybrid suit, an employee files a claim against the union alleging breach of the duty of fair representation by discriminatorily or arbitrarily failing or refusing to pursue his ensuing contractual grievance against the employer, together with a claim against the employer alleging breach of the collective bargaining agreement in violation of § 301 of the LMRA *Id.*; *G.P. Reed v. United Transportation Union*, 488 U.S. 319, 328 (1989); *see Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

In a "hybrid" § 301/fair representation action, the two claims are considered "inextricably interdependent," that is, "[t]o prevail against either the company or the Union . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello*, 462 U.S. at 164-65; *see Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1386 (6th Cir. 1994) ("In a hybrid suit under § 301, to recover against either the employer or the union, a plaintiff must show that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation") (citing *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990)). Thus, "[u]nless [employee-plaintiff] demonstrates both violations, he cannot succeed against either [Defendant]." *White*, 899 F.2d at 560; *Roe*, 519 Fed. Appx. at 757.

Here, to establish that the Union breached its duty of fair representation and that Meridian breached the CBA, Plaintiff relies on the failure of the Union

and Meridian to provide him with an adequate grievance process.[9]  Indeed, while the Union filed an initial grievance on Plaintiff's behalf, there is no dispute that the Union refused to further pursue that grievance after it was rejected by Meridian.  Meridian posits that based on a plain reading of the CBA, Plaintiff was an at-will employee not covered under the CBA because Plaintiff was terminated prior to the expiration of his probationary period.  However, the Agreement's unambiguous and clear language does not lend support to Meridian's interpretation.

At the outset, I note that although construction of collective bargaining agreements is generally governed by federal law, traditional rules of contract construction apply when not inconsistent with federal labor law.  *See UAW, Local No. 1697 v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999); *Transportation-Communication Employees Union v. Union Pacific R.R.*, 385 U.S. 157, 160-61 (1966); *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957); *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Indeed, the interpretation of a collective bargaining agreement or other plan document is typically a question of law. *Skinner*, 188 F.3d at 138; *USW v. PPG Indus.*, No. 01-1601, 2005 U.S. Dist. LEXIS

---

[9] To succeed on his § 301 claim against Meridian, Plaintiff is required to establish both elements of the claim, i.e., that Meridian breached the parties' CBA and that the Union breached its duty of fair representation, even if Plaintiff has settled with the Union and that Union is no longer a defendant.  *See DelCostello*, 462 U. S. at 164-65 (stating that the employee may sue either the employer or the union, but to prevail on the claim the plaintiff must show that the employer breached the contract and that the union breached its duty of fair representation).

12

41660, at *16 (E.D. Pa. Sep. 30, 2005); *see Sheet Metal Workers Local 19 v. Keystone Heating and Air Conditioning*, 934 F.2d 35, 41 (3d Cir. 1991). Where the contract is clear and unambiguous, a court must determine its meaning as a matter of law. *See W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995); *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564-65 (7th Cir. 1995).

The language of a contract, such as a CBA, is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Regents of the Mercersburg College v. Rep. Franklin Ins. Co.*, 458 F.3d 159, 172 (3d Cir. 2006) (citation omitted). In making this determination, "[c]ourts should not . . . distort the meaning of the language or strain to find an ambiguity," *Id.*; *see Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon N.J., Inc.*, 458 F.3d 305, 312 (3d Cir. 2006).

Turning to Meridian's position, this Court's independent review of the language of the CBA compels the conclusion that the agreement is clear on its face that probationary employees are covered under the CBA. In fact, Meridian has not provided any reason why its interpretation of the Agreement is reasonable, nor has Meridian pointed to any ambiguities in the language. This conclusion is consistent with the Third Circuit's finding, in *Roe*, that a plain reading of the CBA does not support the interpretation that "the CBA . . . does not apply to probationary employees." *Roe*, 519 Fed. Appx. at 757.

I start with Article 4.08 of the CBA, which provides that "[a]ll employees . . . will be on probation for ninety (90) calendar days following employment." However, nowhere in that definition does the CBA explicitly exempt

13

"probationary" employees from coverage. *See Id.* In fact, the CBA is unequivocal that it "covers *all employees* . . . and includes permanent full-time [such as Simoni,] or permanent part-time employees." CBA, § 1 (emphasis added). While all employees are subject to a probationary period, nowhere does the Agreement specifically carve out probationary employees as non-union members.[10] Rather, as the Third Circuit has observed, "the CBA [merely] restricts the rights of probationary employees in the receipt of certain fringe benefits (such as vacation time)." *Roe*, 519 Fed. Appx. at 758. Indeed, the CBA sets forth specific rights and restrictions for probationary employees. *See, e.g.*, CBA, Art. 3.02 ("Employees shall receive a performance appraisal at the completion of their three (3) month probationary period"); Art. 8.07(d)("[e]mployees who have completed their probationary period and terminate or are laid off will receive pay for all earned PTO through the last full day of active work"); Art. 8.12 ("Although vacation time is earned time from the first paid day, vacation time may only be taken after the completion of the three (3) month probation period"). I find that as a matter of law, that the CBA is unambiguous and provides coverage to probationary employees.

Notwithstanding the clear and unambiguous language of the CBA, Meridian submits that the Court must interpret the CBA consistent with the mutual understanding of Meridian and the Union -- that employees in their first 90 days of employment are employed "at-will" and are not entitled to the CBA's

---

[10]   I note that the Third Circuit has also rejected the argument that all probationary employees are "temporary" as defined by Article 4 of the CBA. I agree and need not expand upon that further.

14

protections. In that regard, Meridian offers the deposition of Mr. DeLuca, who essentially testified that that neither the Union nor Meridian considered Simoni to be a member of the Union at the time the decision was made to terminate his employment. *See* DeLuca Dep., T37-T38. However, given the clarity of the language in the CBA, Meridian's attempt to introduce extrinsic evidence of intent violates the cannons of contractual interpretation.

It is well-settled law that "[i]f a contract is explicit and unambiguous . . . there is no need to look to extrinsic evidence." *Local 827, IBEW v. Verizon New Jersey, Inc.*, 458 F.3d 305, 312 (3d Cir. 2006) (quotations and citations omitted); *Local 13, Int'l Fed'n of Professional & Technical Eng'rs v. Gen. Elec. Co.*, 531 F.2d 1178, 1183 n. 13 (3d Cir. 1976); *Quick v. NLRB*, 245 F.3d 231, 247 (3d Cir. 2001); *Zylla v. Unisys Corp.*, 57 Fed. Appx. 79, 86 (3d Cir. 2003)("[b]ecause the contract language of the CBA is unambiguous and the exclusion of evidence was not inconsistent with substantial justice, we will affirm the District Court's decision to exclude extrinsic evidence regarding a past practice of valuing accounts at book value."). Moreover, extrinsic evidence of "past practice" could be admitted, if at all, only to resolve an ambiguity in the CBA. *See Skinner Engine Co.*, 188 F.3d at 146. Here, because the CBA is clear that it covers probationary employees, the Court cannot consider any extrinsic evidence to the contrary.[11]

---

[11] Moreover, even Mr. DeLuca, during his deposition, conceded that the language of the CBA, as it is currently drafted, "need[s] to be clearer on [the] interpretation" that probationary employees "do not get the right to challenge an unjust termination during probationary periods." DeLuca Dep., T139-T140. That after the fact comment does not transform what is clear language into that of ambiguity.

15

Having determined that Plaintiff was entitled to the protections of the CBA at the time he was terminated from his employment at Meridian, my next determination is whether the Union breached its duty when it refused to pursue a grievance on Plaintiff's behalf. I answer that in the affirmative. To demonstrate a breach of the duty of fair of representation, Plaintiff must establish that "'in light of the factual and legal landscape at the time of [its] actions, the Union's behavior is so far outside a 'wide range of reasonableness' as to be irrational.'" *Roe*, 519 Fed. Appx. at 757 (quoting *Air Line Pilots Ass'n v. O'Neil*, 499 U.S. 65, 67 (1991)). Indeed, based on that standard, the Third Circuit found that the Union, here, acted "irrationally" when it declined to pursue arbitration on Plaintiff's behalf pursuant to the Union's strained reading of the CBA, which clearly finds no support in the plain language of the agreement. *See Id.* Put differently, the Union's interpretation of the CBA is clearly erroneous, and its actions taken consistent with that interpretation "fell outside of the wide range of reasonableness" and thus, breached its duty of fair representation. *Id.*

Finally, the last inquiry on Plaintiff's § 301 claim is whether Meridian breached the CBA. To support his claim in this regard, Plaintiff argues that Meridian breached the CBA in two ways: first, by failing to allow Plaintiff to avail himself of the grievance process, and second, by terminating Plaintiff without just cause. On this issue, Meridian has not advanced any argument since it took the position that Plaintiff is not a covered employee under the CBA. There is no dispute, however, that Meridian precluded Plaintiff from engaging in the grievance process because it erroneously deemed Plaintiff an "at-will" employee.

Based on that action alone, Plaintiff has proven as a matter of law that Meridian breached Article 13 of the CBA, which sets forth in detail the rights of employees to pursue administrative grievances.  As to whether Meridian terminated Plaintiff without just cause,[12]  I need not address this here, because there are questions of exhaustion that must be resolved in the first instance.

Since I have found that Plaintiff is a covered employee under the CBA, and that, correspondingly, Plaintiff has proven his § 301 hybrid claim against Meridian as to Meridian's failure to afford Plaintiff his grievance-related rights under the CBA, what remains is the relief to which Plaintiff is entitled.  The parties have not adequately addressed this issue in their briefing.[13]  However, while this Court is not making a definitive finding, here, as to the type of relief Plaintiff should obtain, I note for the parties' consideration the issue whether Plaintiff should first pursue the administrative grievance process.  Indeed, there is no dispute that the CBA explicitly provides that any complaints an employee, such as Plaintiff, has against Meridian must be resolved through the "Grievance Procedures."  *See generally,* CBA, Art. 13.  While it is true that Plaintiff had no other recourse than to file a federal lawsuit as a result the actions taken by the Union and Meridian to refuse Plaintiff his grievance rights under the CBA, now

---

[12]   Indeed, the parties dispute the reason why Meridian terminated Plaintiff; each party has a different version of facts surrounding Plaintiff's termination. In that regard, the "just cause" inquiry may overlap with the substantive analyses of Plaintiff's State Law Claims.  Hence, there are numerous factual disputes that would preclude summary judgment on this issue.

[13]   Although Plaintiff, in his Amended Complaint, seeks various relief, such as, *inter alia*, reinstatement and back pay, Plaintiff does not specifically request relief in connection with his § 301 claim against Meridian.

17

that I have made a determination that Plaintiff is entitled to those rights, it appears that Plaintiff may have to avail himself of the contractual remedies provided by the CBA. *See Ames v. Westinghouse Electric Corp.*, 864 F.2d 289, 292 (3d Cir. 1988)(finding in a § 301 claim context that "[courts] cannot lose sight of the point that the employee's claim is contractual in nature. When the collective bargaining agreement provides for an arbitral resolution of what is due to an employee, an appropriate remedy would appear in most instances to be an arbitration conducted by the union in good faith."); *see also Vaca v. Sipes*, 386 U.S 171, 196 (1967). In any event, I will afford the parties an opportunity to present their respective positions on this issue.[14]

## CONCLUSION

For the reasons expressed herein, Plaintiff's motion for summary judgment on his § 301 hybrid claim solely as it relates to Meridian's failure to provide Plaintiff his grievance rights is hereby **GRANTED**. The parties are directed to submit additional briefing as to the relief to which Plaintiff is entitled as a result of this Court's decision. And, in that regard, the parties shall address whether Plaintiff must avail himself of the "Grievance Procedures" provided by the CBA

---

[14] Should this case ultimately remain in this Court, there are issues related to § 301 preemption of Plaintiff State Law Claims that must be addressed by the parties. *See N.J. Carpenters v. Tishman Constr. Corp.,* 760 F.3d 297, 305-06 (3d Cir. 2014) ("LMRA § 301 completely preempts a state cause of action [] when the resolution of said action is 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.")(quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) ("[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement.").

in the first instance.  Plaintiff and Defendant are directed to each submit briefing on those issues by no later than September 25, 2015.  The parties are not permitted to file a response unless otherwise ordered by the Court.

All other motions for summary judgment filed by Plaintiff and Defendants are hereby **DENIED** without prejudice.


Dated:  August 18, 2015                                              /s/     Freda L. Wolfson        
                                                                                            Freda L. Wolfson, U.S.D.J.