UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN SIMONI,<br><br>        *Plaintiff*,<br><br>v.<br><br>EDWARD DIAMOND, et al. ,<br><br>        *Defendants*. | Civil Action No.: 3:10-cv-6798 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on two motions. The first is a motion by Plaintiff captioned "final motion for summary judgment on the sole federal claim and to permit continued adjudication of all other claims by the N.J. Superior Court." (ECF No. 116). The second is a motion for Summary Judgment (ECF No. 121) brought by all Defendants.

I.

The procedural history of this case is confusing because since its inception, it has been transferred among three District Court Judges and the Third Circuit[1]. Therefore the procedural history is set forth below.

On December 28, 2010, Plaintiff Stephen Simoni (hereinafter "Plaintiff" or "Simoni") brought this suit against Defendants, including his employer,[2] various hospital employees[3], as well as his union[4] ("Union").

---

[1] On March 20, 2013, the Third Circuit Court of Appeals affirmed in part and reversed in part an October 6, 2011 decision made by District Court Judge Joel Pisano, and remanded the case to this Court.

[2] Simoni had one employer, Jersey Shore University Medical Center but at some point Meridian Health Services, Inc. merged with or purchased the ownership interests of JSUMC. Herein, the employer is referred to as "Meridian."

[3] The employees include two managers (Cusson and Diamond) and two experienced nurses (Clark and Lovey).

[4] Health Professionals and Allied Employees ("HPAE), AFT/AFL-CIO, and HPAE Local #5508, HPAE (collectively, the "Union").

1

The Amended Complaint alleges seven causes of action: (1) a hybrid claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), alleging that Meridian breached the Collective Bargaining Agreement ("CBA") and that the Union breached its duty of fair representation and (2) a claim under Section 7 of the National Labor Relations Act ("NLRA"), 28 U.S.C. § 157, alleging that Meridian violated the Plaintiff's right to engage in collective bargaining. The remaining causes of action are referred to as the "state claims". They are: 1) a claim under the New Jersey Law Against Discrimination (NJLAD) against Meridian and the managers; (2) a defamation claim against Meridian and the nurses; (3) a breach of contract claim against Meridian; (4) a claim under New Jersey's Conscientious Employee Protection Act ("CEPA") against Meridian and managers; and (5) a claim for tortious interference with prospective economic advantage against Meridian and the employees.

On October 6, 2011, Joel Pisano, U.S.D.J., dismissed Plaintiff's complaint for failure to state a claim upon which relief could be granted. Judge Pisano also declined to grant supplemental jurisdiction over the state causes of action. In his opinion, Judge Pisano found (1) that Plaintiff was a probationary employee; and (2) that this probationary status did not endow Plaintiff with any contractual right under the collective bargaining agreement (CBA); and (3) the Union had no duty of fair representation. Since these were the only claims giving rise to jurisdiction, Judge Pisano declined to take supplemental jurisdiction over the state law claims. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

On March 20, 2013, the Third Circuit affirmed in part and reversed in part Judge Pisano's decision. Specifically, the Third Circuit affirmed the dismissal of Plaintiff's NLRA claim but reversed the dismissal of Plaintiff's § 301 claim (hybrid claim). The Third Circuit found that the Plaintiff had paid union dues, and there was no provision in the CBA that excludes

2

probationary employees from being union members. As such, the Third Circuit found that the facts were sufficient to state a claim against the Union for breach of duty of fair representation and a breach of the CBA by Meridian for failing to adhere to the grievance provision of the CBA. See *Roe v. Diamond*, 519 F. App'x 752, 758 (3d Cir. 2013). The Third Circuit remanded the matter for proceedings consistent with its opinion and noted that the since the LMRA claim was reinstated, "the state law claims are reinstated, as well."

On September 24, 2012, while the matter was pending before the Third Circuit, Plaintiff filed a suit in the Superior Court of New Jersey, Monmouth County, alleging the same state claims as set forth in this case. (Docket No. MON-L-4020-12).

On February 24, 2014, the Union and the Plaintiff settled the claim against the Union for failure to provide fair representation.

On January 9, 2015, the parties brought motions for summary judgment wherein Plaintiff sought summary judgment on the hybrid claim; and Defendants cross-moved for summary judgment on all counts.

On August 18, 2015, Judge Wolfson granted Plaintiff's motion for summary judgment, ruling that Meridian violated § 301 of the LMRA by failing to follow the grievance procedures set forth in the CBA. Moreover, the remaining state claims were denied summary judgment without prejudice so that the parties could further brief whether the LMRA violation would be subject to an arbitration as set forth in the grievance provision, and if yes, what would happen to the remaining state law claims. This issue is addressed below.

II.

Plaintiff commenced employment with Meridian in August 2010. Although initially hired as a per diem registered nurse within the medical intensive care unit, Plaintiff ultimately accepted a position within a cardiac catheterization laboratory. At this new job (August 10,

2010), Plaintiff participated in a one-day mandatory orientation program for new nurses and a longer term preceptor program. At that time, Plaintiff received a copy of the CBA and began paying union dues.

Plaintiff was assigned initially to work with Nurse Clark as part of Meridian's preceptor program ("Preceptor Program"). This program is designed to orient and assess new nurses[5]. During the course of the assignment, Plaintiff requested that a different preceptor be assigned because Clark was neither properly orienting him nor complying with Meridian's Code of Conduct. That is, that Clark had "violated New Jersey safe patient care for cardiac catherization laboratory."

In turn, Clark similarly criticized that Simoni did not understand the "whole picture;" needed significant oversight; and his conduct was generally unsafe because he was unwilling to accept guidance or assistance.

Subsequently, Plaintiff was assigned to Nurse Lovey as his preceptor. Plaintiff maintains that his relationship with Lovey was positive for the duration of the preceptor period, except for the final day. On the final day, Plaintiff alleges that Lovey became demanding, and required Plaintiff to perform tasks that he had never previously performed.

Lovey reported to management that Simoni had improved, but that "he had a lot to learn" and that he became defensive when criticized. That same day, Defendant Lovey reported that Simoni's work was deficient. Specifically, Lovey reported that Plaintiff failed to perform "time-outs," and his constant unexplained movements in the Cath Lab during procedures was distracting to others. In response, Simoni reported to management that Lovey had allegedly committed twenty-six violations of the Health Insurance Portability and Accountability Act.

---

[5] If a nurse successfully completes the preceptor program, the nurse's status is changed from probationary to permanent.

4

After discussing Lovey's evaluation with Cusson, a manager, Cusson advised Simoni that unless his work improved, he would be terminated at the end of the probationary period. In addition, Simoni was requested to refrain from confronting Lovey. Immediately thereafter, Simoni confronted Lovey about the progress report. Cusson considered Simoni's confrontation with Lovey as an act of insubordination. This incident, plus his general defensive approach to constructive criticism, led to his dismissal by Meridian on October 18, 2010.

Following his termination, Plaintiff contacted the Union to grieve his dismissal. Frederick DeLuca ("DeLuca"), a Union representative, filed the grievance on behalf of Plaintiff, but the grievance was denied by Meridian. DeLuca then informed Plaintiff that he would not pursue the grievance any further because Plaintiff was terminated during his probationary period. DeLuca noted that the "past pattern and practice and the way the Union and Corporate Defendants 'read' the CBA" led them to conclude that the CBA's procedural and substantive protections do not apply to probationary employees. Dissatisfied with that response, Plaintiff filed the instant action.

III.

Currently before the Court are two motions. The first is a motion by Plaintiff captioned "final motion for summary judgment on the sole federal claim and to permit continued adjudication of all other claims by the N.J. Superior Court." The second is a second motion for Summary Judgment brought by Defendants requesting that a court order be issued ordering all causes of action to proceed through the grievance procedure.

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Brooks v. Kyler,* 204 F.3d 102, 105 n. 5 (3d Cir.2000) (citing Fed R. Civ. P. 56(c)). The burden of demonstrating the absence of a genuine issue of

material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 305 (3d Cir.1999). Once the moving party has satisfied this initial burden, the opposing party must identify specific facts which demonstrate that there exists a genuine issue for trial. Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* Fed R. Civ. P. 56(e); *Anderson,* 477 U.S. at 249. In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). Accordingly, it is not the court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks,* 204 F.3d at 105 n. 5 (citing Anderson, 477 U.S. at 249).

## IV.

Generally, federal courts favor the policy of deferring to the parties' chosen method of settling grievances. "It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration." *Teamsters Local Union No. 30 v. Helms Express, Inc*., 591 F.2d 211 (3d Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979).

Here, the Court defers to the grievance procedure set forth in the CBA. It is well established that an employee must ordinarily attempt to exhaust grievance procedures before

bringing suit for breach of a collective bargaining agreement pursuant to LMRA (29 U.S.C. § 185); see *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, there is an exception to this policy where an employee can demonstrate that a union breached its duty of fair representation and that an employer refused to submit to arbitration (hybrid claim). In such a case, an employee is free to pursue the hybrid claim in court. See *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164, (1983); *Vaca v. Sipes*, 386 U.S. 171, (1967); *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir.1981). In this case, the Union and the Plaintiff settled their dispute on February 24, 2014; therefore, the hybrid nature of the claim no longer exists – the Union settled. As such, the question before the Court is whether the Court should hear the LMRA claim or defer it to arbitration.

Throughout the six years of litigation, the Plaintiff has insisted that he was a Union employee pursuant to the terms of the CBA, and that he was entitled to the protections included in the CBA. Despite that contention, the Plaintiff has dramatically changed his position. Plaintiff now asks the Court to order back pay from the date of his dismissal through today, and deny granting supplemental jurisdiction so that all of his state claims can be adjudicated in state court. Defendant Meridian's position is that it requests that the Court refer all causes of action to the grievance procedures set forth in the CBA. (See ECF No. 123-9, p.8).

After considering all of the arguments, it is the Court's view that the policy of deferring to the parties agreed upon method of resolution controls. That is, the dispute regarding Plaintiff's termination should be decided in accordance with the CBA's grievance procedure. As the CBA requires any issue "arising from the application, interpretation or claimed violation of this Agreement, will be adjusted in accordance" with the grievance provision of the CBA.

Having resolved that issue, this leaves open how all of the state claims will be adjudicated. On its face, it appears that the factual contentions for all the state claims are

7

intertwined with the facts of Plaintiff's termination. That being the case, an arbitrator could reasonably determine all of the facts and reach a result on each cause of action; however, settled case law disagrees.

For the last several decades, the Supreme Court and the circuit courts have labored over the proper forum to resolve cases like this one. For example, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985), the Court extended the reach of federal preemption under the LMRA, finding that § 301 preempted tort and contracts as well as suits implicating "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Id.* at 211. However, the Supreme Court also cautioned that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted ... [because] it would be inconsistent with congressional intent . . . to preempt state rules that . . . establish rights and obligations independent of a labor contract." *Id.* As such, a state law claim will be found to be preempted by § 301 if the claim is: (1) founded directly on rights created by a collective bargaining agreement, or (2) substantially dependent upon an analysis of a collective bargaining agreement. *Shanefelter v. U.S. Steel Corp.,* 784 F.Supp.2d 550, 558 (W.D.Pa.2011) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394.

For preemption purposes, a state law claim is not independent of the collective bargaining agreement if its evaluation "is inextricably intertwined with consideration of the terms of the labor contract." *Lueck,* 471 U.S. at 213. As the Supreme Court expounded, "if resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law . . . is preempted and federal labor law principles . . . must be employed to resolve the dispute." *Lingle v. Norge Division of Magic Chef, Inc* , 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410. It logically follows that a state law claim is not preempted "as long as

[it] can be resolved without interpreting the agreement itself." *Id*. at 409-10. Thus, when "[t]he heart of the [state law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar,* 482 U.S. at 394.

With this tenet in mind, each state claim must be reviewed to determine whether it is independent from the CBA. The review requires (1) that the Court determine the elements of the claims and then; (2) determine whether those claims can be resolved "without interrupting or depending on the proper interpretation of the CBA." *Caterpillar*, 482 U.S. at 394.

Plaintiff asserts a breach of contract claim. It is founded directly upon rights created by the CBA and therefore falls squarely within the purview of the LMRA and is completely preempted. *Caterpillar*, 482 U.S. at 395, 107 S.Ct. 2425.

Plaintiff alleges the Defendants defamed him and interfered with his current and prospective employment by making false statements orally and in writing during his participation in the preceptor program. The analysis of both claims overlap and, as such, are discussed together. Under New Jersey law, a claim for defamation consists of three elements: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.' " *Leang v. Jersey City Bd. of Educ.,* 198 N.J. 557, 969 A.2d 1097, 1113 (2009*) (quoting DeAngelis v. Hill,* 180 N.J. 1, 847 A.2d 1261, 1267–68 (2004)*); see also Moriarty v. Classic Auto Grp., Inc.,* No. 13–5222, 2014 WL 2601887, at *5 (D.N.J. June 11, 2014*).*

In order to state tortious interference claims under New Jersey law, Plaintiff must allege four elements: (1) a protected interest—either a prospective economic or contractual relationship; (2) malice, i.e., intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the (prospective economic or contractual) gain; and (4) resulting damages. See, e.g., *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp*.,

9

2016 WL 344888, at *8 (D.N.J. Jan. 26, 2016) (citations omitted); *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc*., 141 F.Supp.3d 298, 309 (D.N.J.2015) (citations omitted).

Because the alleged false statements and tortious interference conduct occurred during the Plaintiff's participation in the preceptor program, they relate directly to Section 3.02 of the CBA (titled "Staff Development."). The statements in question relate to the alleged probationary period of employment between Plaintiff and Meridian, and concern a dispute over Plaintiff's progress reports as issued by the nurses. As such, they are intertwined with consideration of the CBA, and the ultimate question of whether Meridian had "just cause" to terminate the Plaintiff. Therefore, the claims fall within the purview of the LMRA and are preempted.

Plaintiff asserts that Meridian representatives discriminated against him in violation of NJLAD because of his gender. Various district courts in New Jersey have held that claims under the NJLAD are separate and independent from terms of labor contracts. See, e.g., *Naples v. New Jersey Sports and Exposition Authority,* 102 F.Supp 2d. 550, 553 (D.N.J.2000) (because state claims can be resolved without interpreting the CBA, the claims are not preempted by the LMRA); *Mitchell v. Village Super Market, Inc.,* 926 F.Supp. 476, 479–81 (D.N.J.1996). There is a caveat. When the Plaintiff's discrimination claim actually turns on "questions of promotion, seniority, and assignment to training programs" courts have found preemption of state law discrimination in cases where the CBA specifically governed the litigated cases. *See Reece v. Houston Lighting & Power Co*., 79 F.3d 485 (5th Cir.), cert. denied, 519 U.S. 864, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996). Since the reverse discrimination claim does not turn on promotion, seniority or assignment into a training program, it is a separate claim that is not preempted.

The Court finds that the NJLAD claim is independent of the CBA.

Lastly, Plaintiff asserts a CEPA claim. In order to establish a CEPA claim, Plaintiff must demonstrate that (1) he reasonably believed that Defendant's conduct was violating a law, rule, regulation, or clear mandate of public policy; (2) he performed whistle-blowing activity (i.e., complained about the Defendant's conduct); (3) Defendants took an adverse employment action against him; and (4) there was a causal link between his whistle-blowing activity and the adverse employment action. See, e.g., *Dzwonar v. McDevitt,* 828 A.2d 893, 900 (N.J.2003). The courts previously considered the issue of whether a CEPA claim is preempted by LMRA § 301. *Reynolds v. TCM Sweeping, Inc.,* 340 F.Supp.2d 541 (D.N.J.2004) and *Patterson v. Exxon Mobil Corp.,* 262 F.Supp.2d 453 (D.N.J.2003). Both courts held that the respective plaintiffs' CEPA claims were not preempted because the primary issue in resolving such claims was not the interpretation of a collective bargaining agreement, but an examination of the parties' actions and motivations. *See Reynolds,* 340 F.Supp.2d at 547-49; *Patterson,* 262 F.Supp.2d at 458-64; *see also Lingle,* 486 U.S. at 470 (holding that state retaliatory discharge statute was not preempted by LMRA § 301 because adjudication of the claim focused on the employee's conduct and the employer's conduct and motivations, not on an interpretation of the terms of a collective bargaining agreement).

Plaintiff claims he was terminated for reporting a nurse's violation of the Health Insurance Portability and Accountability Act and Meridian's Code of Conduct. The nurse was the Plaintiff's first nurse preceptor during the first four weeks of his ninety-day probation period. In order to adjudicate the CEPA claim, one must determine what happened between the parties, and their motivations as opposed to an interpretation of the contract. Therefore, in this matter, LMRA does not preempt CEPA.

V.

With regard to supplemental jurisdiction, a district court has discretion to decline supplemental jurisdiction over a state law claim. Where the claims over which the district court had original jurisdiction are dismissed before trial, "the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F. 3d 370, 788 (3d Cir. 1995); see also *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the defamation, tortious interference, breach of contract, are being referred to the arbitrator because they are preempted. As such, I grant supplemental jurisdiction.

The remaining claims, NJLAD and CEPA, could reasonably be handled by the New Jersey Superior Court; however, taking such an approach would be imprudent. This case was initially filed in federal court, and it has endured through an elongated litigation track – more than six years. Moreover, all of the discovery has been overseen by district court magistrate judges. It would be inefficient to refer the remaining claims to State court after this Court's long involvement. The final aspects of this litigation can be resolved through summary judgment motions. It is more efficient to maintain control of the litigation or arbitration in one court. As such, I grant supplemental jurisdiction over all state claims.

ORDER

IT IS on this 9TH day of January, 2017;

ORDERED that Plaintiff's motion for summary judgment (ECF No. 116) is denied; and it is further;

ORDERED that the Court grants supplemental jurisdiction over the state law claims (breach of contract, tortious interference, defamation, NJLAD and CEPA); and it further

ORDERED that Defendant's motion for summary judgment (ECF No. 21) is granted in part and denied in part; and it is further

ORDERED that the following causes of action shall be subject to the grievance procedure set forth in the CBA.  They are unlawful termination under CBA, defamation, tortious interference and breach of contract.  The parties shall proceed through the grievance procedure set forth in the CBA within thirty days; and it is further

ORDERED that NJLAD and CEPA claims will proceed before this Court.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.